IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAYTON CONSTRUCTION CO., INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>WRAPID SPECIALTY, INC. a California Corporation f/k/a DBH Resources, Inc.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:14-cv-00402<br><br>District Judge David Nuffer |

Defendant Wrapid Specialty, Inc. ("Wrapid") filed this motion[1] to dismiss the Complaint[2] filed by plaintiff Layton Construction Co., Inc. ("Layton"). Layton's Complaint was initially filed in Utah State District Court, and subsequently removed to the U.S. District Court.[3] Layton claims Wrapid misrepresented provisions of an insurance program for construction contractors on a development in Colorado[4] and was negligent in "communicating, describing, explaining, preparing and/or administering" the insurance program.[5] Layton's third claim for relief seeks "a declaratory judgment stating that . . . Wrapid Specialty is liable to Layton in the full amount" of Layton's liability for construction defects in an underlying litigation,[6] and Layton's fourth claim for relief is for promissory estoppel regarding "certain promises to Layton regarding the

---

[1] Motion to Dismiss and Memorandum in Support ("Motion"), <u>docket no. 20</u>, filed June 30, 2014.

[2] Complaint, <u>docket no. 2-1</u>, filed May 29, 2014.

[3] *Id.*; Motion at ix.

[4] Complaint ¶¶ 41–49, at 11–12.

[5] *Id.* ¶ 38, at 10; *see also id.* ¶¶ 37–40, at 10.

[6] *Id.* ¶ 56, at 13; *see also id.* ¶¶ 50–56, at 12–13.

insurance that would be procured for Layton and its Subcontractors."[7] Wrapid argues that

Layton's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). Wrapid

advances five grounds for dismissal: an expired statute of limitations, claim preclusion, failure to

allege actionable misrepresentations, the economic loss rule, and claim splitting.[8] For the reasons

stated below Wrapid's Motion is GRANTED in part and DENIED in part.

## TABLE OF CONTENTS

Table of Contents ........................................................................................................................... 2
Layton's Complaint ....................................................................................................................... 3
    I.      Background ...................................................................................................... 3
    II.     Wrapid's Representations Regarding the Program ........................................ 4
    III.    Underlying Litigation Regarding the Project .................................................. 7
    IV.   Denial of Coverage to Layton ......................................................................... 8
Unnecessary to Convert to a Rule 56 Motion ............................................................................... 9
Rule 12 standard .......................................................................................................................... 11
Analysis ........................................................................................................................................ 12
    I.      Statute of Limitations .................................................................................... 12
        A.     Standard for Application of the Statute of Limitations ........................... 13
        B.     Arguments on Claim Accrual .................................................................. 14
        C.     Discussion on Statute of Limitations Grounds for Motion to Dismiss ..... 14
        D.     Conclusion – Layton's Claims Are Not Barred by Statute of Limitations 19
    II.     Layton Failed to State Actionable Negligence and Negligent Misrepresentation
        Claims ........................................................................................................... 20
        A.     Layton's Allegations of Negligence and Negligent Misrepresentation Are
             Identical ................................................................................................... 20
        B.     Wrapid's Duty under Utah Code § 31A-23a-402 ................................... 21
        C.     The Alleged Misrepresentations and Omissions Are Not Actionable ...... 24
             (1)    Statements regarding future events ................................................ 24
             (2)    Statements of opinion ..................................................................... 27
             (3)    Statements that were not alleged to be false ................................. 29
             (4)    Omissions that were not false or misleading ................................. 31
    III.    Declaratory judgment ................................................................................... 35
    IV.    Promissory Estoppel ..................................................................................... 35
Order ............................................................................................................................................ 40

---

[7] *Id.* ¶ 58, at 13; *see also* ¶¶ 57–62, at 13–14.

[8] Motion at iv–ix.

**LAYTON'S COMPLAINT**

When considering a motion to dismiss for failure to state a claim, courts presume the thrust of all well-pleaded facts in the complaint, but need not consider conclusory allegations.[9] Courts bound to accept the complaint's legal conclusions and opinions, whether or not they are couched as facts.[10] But, courts "must construe [those facts] in the light most favorable to the plaintiff."[11] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[12] In this case, the Complaint incorporates by reference a manual that Wrapid provided to Layton, among other documents. This summary reflects Layton's version of the facts.

## I.    Background

On October 26, 2006, Black Diamond Resorts-Vail Resorts LLC ("Black Diamond") engaged Layton as the general contractor for Black Diamond's resort construction project in Vail, Colorado (the "Project"), with construction beginning soon thereafter.[13] "On January 24, 2007, Black Diamond and Layton entered into a second, superseding construction contract."[14] As part of the Project's construction contracts, Black Diamond required all of the Project's

---

[9] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir.2009).

[10] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir.1995).

[11] *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).

[12] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.2009) (citations omitted). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp.2007)).

[13] Complaint ¶¶ 6–7, at 3.

[14] *Id.* ¶ 7, at 3.

construction participants, therefore including Layton, to enroll in the Project's "wrap-up insurance program," brokered by Moody Insurance Agency ("Moody"),[15] a non-party.

Through Moody, Black Diamond was introduced to Wrapid[16] and retained Wrapid to serve as the administrator for the program.[17] Layton alleged that Wrapid "holds itself out as a professional in insurance matters."[18] Wrapid and Black Diamond entered into an agreement for services on or about November 8, 2006, requiring Wrapid to "provide certain information to the construction professionals before they entered into their respective construction contracts" and "provide consultancy services to the fullest professional standards applicable to each service," while ensuring that "Black Diamond would get the expertise of Wrapid Specialty's team of legal insurance and risk management specialists."[19]

## II.   Wrapid's Representations Regarding the Program

On or about November 17, 2006, Wrapid held an orientation meeting and gave a PowerPoint presentation to representatives of Layton and Black Diamond about the wrap-up insurance program.[20] Wrapid "represented that the Program would provide Layton with the same or better insurance coverage than Layton already had"[21] and "that the program was a superior insurance product compared to what the constructions participants, including Layton, had under their own insurance."[22] Wrapid also "discussed its roles and responsibilities on the Project and the implementation of the Program" and "advised Layton about the insurance coverage provided

---

[15] *Id.* ¶ 19, at 5.

[16] *Id.*

[17] *Id.* ¶ 20, at 6.

[18] *Id.* ¶ 19, at 5.

[19] *Id.*

[20] *Id.* ¶ 23, at 7.

[21] *Id.*

[22] *Id.* ¶ 22, at 7.

under the Program."[23] "[T]his information was purportedly 'customized' to the Program's

insurance coverage."[24] At the time of the November presentation, "the insurance policies under

the Program had not yet been bound or issued;"[25] but were eventually procured by Moody.[26] The

policies' effective date is December 20, 2006.[27]

Wrapid also distributed a manual explaining the Program (the "Manual").[28] The Manual

provided examples of the general liability claims the Program was intended to cover, such as

"third-party bodily injury and property damage arising from enrolled Subcontractors' work, and

property damage to completed work on the Project site during construction."[29] The Manual also

"stated that the Program covered the entire period of the Project's construction plus completed

operations coverage for the duration of any applicable statutes of limitation.[30] The Manual

included a "section titled Summary of Program" which describes "$52,000,000 in insurance

coverage."[31]

The Manual stated that "due to the coverage provided under the Program, enrolled

construction participants were not required to separately purchase completed operations coverage

for the Project."[32] Layton alleged that the Manual "advised enrolled construction participants to

exclude the Project from their commercial general liability insurance policies to save

---

[23] *Id.*

[24] *Id.*

[25] *Id.* ¶ 23, at 7.

[26] *Id.* ¶ 22, at 7.

[27] *See* Wrap-up Insurance Program Policies, attached collectively as Exhibit D to Motion, docket no. 20-5, filed June 30, 2014.

[28] Complaint ¶ 24, at 7.

[29] *Id.* ¶ 27, at 8 (internal quotations omitted).

[30] *Id.*

[31] *Id.* ¶ 29, at 9.

[32] *Id.* ¶ 26, at 8.

premiums,"[33] but in fact the Manual did not *advise* such a coverage exclusion, it merely identified the possible savings: "[t]he Project *may* be excluded from your normal general liability insurance policy for a *possible* premium and deductible savings."[34] The Manual also "advised construction participants that the Program did not cover worker's compensation, automobile liability, or contractor's equipment, and that the participants would need to procure such insurance on their own."[35]

The Manual "said nothing to the enrolled construction participants to the effect that they needed to procure general liability insurance for damage to the Project occurring during construction,"[36] and also "did not indicate that the Program's completed operations coverage only incepted when the Project was completed and closed escrow."[37] Rather, the Manual stated that "the Program provided comprehensive commercial general liability and completed operations coverage to enrolled construction participants for their work performed at the Project site."[38] Finally, "the Manual made no reference to the various layers of coverage having different exclusionary provisions, including a so-called Cross Suits Exclusion in the Interstate Policy,"[39] nor does it "mention any differences in the coverage provided by the various layers."[40]

---

[33] *Id.* ¶ 26, at 8.

[34] *See* Manual at 7, attached as Exhibit C to Motion, docket no. 20-4, filed June 30, 2014 (emphasis added); *see also id.* at 15 ("you are not required to buy additional insurance or completed operations coverage for your ongoing contractual indemnity obligations for this Project (unless you decide to buy such insurance)") (emphasis added).

[35] Complaint ¶ 28, at 8–9.

[36] *Id.* ¶ 28, at 8–9.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.* ¶ 29, at 9.

Layton also alleged "[u]pon information and belief [that] representatives of Layton also had telephone conversations with representatives of Wrapid Specialty wherein Wrapid Specialty made additional representations to Layton concerning the Program's coverage and limitations."[41]

Layton states that "once the insurance policies were actually procured, Layton came to learn that there were severe and material limitations and exclusions in those policies" and concludes that "the coverage provided by the Program [was therefore] illusory."[42] Layton states that Wrapid "failed to timely disclose these severe and material limitations to Layton, and otherwise failed to fully and accurately describe the Program."[43]

### III.    Underlying Litigation Regarding the Project

In March 2009, "Black Diamond defaulted on its loan obligations" to Barclays Capital Real Estate Inc. ("BCRE") which financed the project, and BCRE succeeded to Black Diamond's rights and obligations in the Layton contract.[44] Following a disagreement between Layton and BCRE regarding Layton's work and compensation, BCRE terminated its contract with Layton on June 11, 2009.[45] BCRE retained a replacement general contractor and the project continued, with BCRE in July 2009 designating a company named Vail 09 as its designee, to which Black Diamond formally conveyed its rights in the Project and any rights and obligations under the Layton-Black Diamond contract.[46] Also in July 2009, Vail 09 gave Layton notice of "several hundred defects in the work performed by Layton and its subcontractors. . . ."[47]

---

[41] *Id.* ¶ 30, at 9.

[42] *Id.* ¶ 22, at 7.

[43] *Id.*

[44] *Id.* ¶ 9, at 3.

[45] *Id.* ¶¶ 9–10, at 3–4.

[46] *Id.* ¶ 11, at 4.

[47] *Id.* ¶ 12, at 4.

In September 2009, Layton filed a lawsuit in Colorado state court against BCRE and several subcontractors styled *Layton Construction Co., Inc. v. Barclays Capital Real Estate Inc., et al.*, Eagle County District Court, State of Colorado, Case No. 09CV606 (the "BCRE Litigation").[48] Layton stated claims for breach of contract, unjust enrichment, and intentional interference with contractual obligations, among other claims,[49] and BCRE responded with "multiple counterclaims against Layton involving alleged property damage as a result of alleged construction defects at the Project."[50] BCRE and Vail 09 also asserted cross-claims against several subcontractors, including seeking "contribution and indemnification from [them] for the defects and damage."[51] Layton then amended its complaint to seek contribution and indemnification from certain subcontractors to the extent Layton was found liable to BCRE and Vail 09 for those subcontractors' defects."[52] According to Layton, the alleged construction defects and property damage at issue in the BCRE Litigation "occurred during the period of coverage for both the primary and first excess carriers' policies."[53]

### IV.    Denial of Coverage to Layton

After BCRE filed its counterclaims against Layton, "on May 19, 2010, Layton tendered notice to the primary carrier and the first excess carrier of the claims asserted against Layton in the [BCRE Litigation]."[54] In November and December of 2010, the primary and excess insurance carriers denied a defense and coverage to Layton.[55] According to Layton, "[b]ecause

---

[48] *Id.* ¶ 13, at 4.

[49] *Id.* ¶ 14, at 4.

[50] *Id.* ¶ 15, at 4–5.

[51] *Id.* ¶ 16, at 5.

[52] *Id.* ¶ 17, at 5.

[53] *Id.* ¶ 33, at 9.

[54] *Id.* ¶ 32, at 9.

[55] *Id.* ¶¶ 34–35, at 10.

the primary and first excess carriers denied a defense and coverage . . . Layton incurred, and continues to incur attorney's fees, costs and expenses in defending the [BCRE Litigation], and is also subject to potential indemnity damages."[56]

## UNNECESSARY TO CONVERT TO A RULE 56 MOTION

Generally, where materials outside of the pleadings are presented, a court must either convert a Rule 12 motion to a Rule 56 motion for summary judgment, or exclude matters presented outside the pleadings.[57] However, "a defendant may submit an indisputably authentic copy to the court to be considered" if they were incorporated by reference in the complaint, if the court may take judicial notice of them, or if they are referenced in the complaint and central to the claims.[58] Conversion to summary judgment affords the plaintiff an opportunity to respond in kind with outside material, but when a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is on notice of the documents' contents, and conversion is unnecessary.[59]

Additionally, a court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.[60] Judicial notice is especially relevant here where a majority of the attached exhibits are filings from another court. The Tenth Circuit has held "that a court may, Sua [sic] sponte, take judicial notice of its own records and preceding

---

[56] *Id.* ¶ 36, at 10.

[57] *Gff Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *see also Alvarado v. KOB-TV, LLC*, 493 F.3d 1210 (10th Cir. 2007); *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986).

[58] *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1206, n.5 (D. Utah 2004).

[59] *GFF Corp.*, 130 F.3d at 1385.

[60] *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (abrogated on other grounds by *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201, 1206, n.5 (D. Utah 2004) (quoting James Wm. Moore et al., *Moore's Federal Practice* ¶ 56.30[4] (3d ed. 1997)).

records if called to the court's attention by the parties,"[61] and "it has been held that federal

courts, in appropriate circumstances, may take notice of proceedings in other courts, both within

and without the federal judicial system, if those proceedings have a direct relation to matters at

issue."[62]

Layton argues that Wrapid improperly sought summary judgment through its 12(b)(6)

motion by arguing the summary judgment standard[63] and by attaching numerous documents to

the motion which were not attached to the complaint.[64] Wrapid's filed exhibits can be grouped

into two categories: first, documents referenced in the complaint,[65] and second, filings in the

Underlying Action and Coverage Action.[66] Moreover, "Layton acknowledges that the documents

---

[61] *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (citing Ginsberg v. Thomas, 170 F.2d 1 (10th Cir. 1948)).

[62] *Id*

[63] Layton's Opposition at 1 (citing Wrapid's Motion at 14 (". . . Layton's alleged reliance on statements in the Manual is not reasonable as a matter of law . . .")).

[64] *Id.*

[65] Layton/Black Diamond Contract, attached as Exhibit A to Wrapid's Motion, docket no. 20-2, filed June 30, 2014; Wrapid/Black Diamond Contract, attached as Exhibit B to Wrapid's Motion, docket no. 20-3, filed June 30, 2014; Wrapid Program Manual, attached as Exhibit C to Wrapid's Motion, docket no. 20-4, filed June 30, 2014; Lloyd's primary insurance policy and Interstate first excess insurance policy, attached as Exhibit D to Wrapid's Motion, docket no. 20-5, filed June 30, 2014; and Complete PowerPoint Presentation with Tabbed Attachments, attached as Exhibit S to Wrapid's Reply, docket no. 26-4 filed Aug. 14, 2014.

[66] Order dismissing BCRE's tort claims in the Underlying Action, attached as Exhibit E to Wrapid's Motion, docket no. 20-6, filed June 30, 2014; Complaint  - Colorado Coverage Action, attached as Exhibit F to Wrapid's Motion, docket no. 20-7, filed June 30, 2014; Motion to Amend Coverage Complaint, attached as Exhibit G to Wrapid's Motion, docket no. 20-8, filed June 30, 2014; Amended Complaint – Colorado Coverage Action, attached as Exhibit H to Wrapid's Motion, docket no. 20-9, filed June 30, 2014; Order granting Interstate Fire's Summary Judgment Motion, attached as Exhibit I to Wrapid's Motion, docket no. 20-10, filed June 30, 2014; Second Motion to Amend Coverage Complaint, attached as Exhibit J to Wrapid's Motion, docket no. 20-11, filed June 30, 2014; Order dismissing Lloyd's with prejudice in Coverage Action, attached as Exhibit K to Wrapid's Motion, docket no. 20-12, filed June 30, 2014; Reply in Support of Second Motion to Amend Coverage Complaint, attached as Exhibit L to Wrapid's Motion, docket no. 20-13, filed June 30, 2014; Layton's Opposition to Wrapid's Motion for Summary Judgment in Coverage Action, attached as Exhibit M to Wrapid's Motion, docket no. 20-14, filed June 30, 2014; Minute Order denying Second Motion to Amend, attached as Exhibit N to Wrapid's Motion, docket no. 20-15, filed June 30, 2014; Order dismissing Moody with Prejudice in Coverage Action, attached as Exhibit O to Wrapid's Motion, docket no. 20-16, filed June 30, 2014; Order Dismissing Wrapid with Prejudice in Coverage Action, attached as Exhibit P to Wrapid's Motion, docket no. 20-17, filed June 30, 2014; BCRE's 210 Answer, Counterclaim, and Crossclaims, attached as Exhibit Q to Wrapid's Reply, docket no. 26-2, filed Aug. 14, 2014; Layton's 2010 Answer to BCRE's Counterclaim, attached as Exhibit R to Wrapid's Reply, docket no. 26-3 filed

attached to the Motion are referred to and central to the Complaint, and Layton does not dispute the authenticity of such documents."[67] Furthermore, Layton attached four exhibits to its opposition and "asks the Court to take judicial notice of th[ose] documents."[68] They fall within the same categories as Wrapid's exhibits. Therefore, each of the exhibits offered by the parties fall within categories of external documents that may be considered in the context of a Rule 12 motion, and conversion to a Rule 56 motion is unnecessary.

## RULE 12 STANDARD

Wrapid moves to dismiss Logan's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants are entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[69] The movant's burden is high: "A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.[70]

The United States Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

---

[67] Aug. 14, 2014; and Layton's 2010 First Amended Complaint, attached as Exhibit T to Wrapid's Reply, docket no. 26-5 filed Aug. 14, 2014.

[67] Layton's Opposition at 2.

[68] *Id.*; PowerPoint Presentation, attached as Exhibit 1 to Layton's Response to Wrapid's Motion to Dismiss ("Layton's Response"), docket no. 23-2, filed July 28, 2014; Wrapid's Response to Layton's Motion for Leave to Amend the Complaint, attached as Exhibit 2 to Layton's Response, docket no. 23-3, filed July 28, 2014; Moody's Motion to Stay Pending Resolution of Underlying Matter, attached as Exhibit 3 to Layton's Response, docket no. 23-4, filed July 28, 2014; and Moody's Supplement to Motion to Stay Proceedings Pending Resolution of the Underlying Matter, attached as Exhibit 4 to Layton's Response, docket no. 23-5, filed July 28, 2014.

[69] *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[70] *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 (1957).

elements of a cause of action will not do.'"[71] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[72] "[N]aked assertions devoid of further factual enhancement,"[73] does not state a claim sufficiently to survive a motion to dismiss.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[74] "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[75] That is, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[76] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[77]

## ANALYSIS

## I.   Statute of Limitations

A statute of limitations affects a court's jurisdictional ability to hear a case, and "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to

---

[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* , 550 U.S. at 555).

[72] *Id.*

[73] *Id.*

[74] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

[75] *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[76] *Robbins v. Oklahoma* 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[77] *Id.* at 1248.

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact [that jurisdiction does not exist] and dismissing the cause."[78] Therefore, the question of whether Layton's claims are barred by the statute of limitations takes priority. For the reasons discussed below, Layton's claims are not barred by a statute of limitations.

## A. Standard for Application of the Statute of Limitations

In Utah, claims for "negligence [and] negligent misrepresentation . . . are . . . subject to the general four-year limitations period pursuant to Utah Code Ann. [§ 78B-2-307(3)]."[79] The parties agree that this statute applies, but they disagree as to its application to these facts. "As a general rule, a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action."[80]

A claim for negligence requires the plaintiff to prove "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."[81] The elements for negligent misrepresentation are (1) a representation made (2) "concerning a presently existing material fact (3) which was false" and (4) which the representor made negligently (5) "for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage."[82] Notably, both causes of action, which are at issue here, require damages before a plaintiff can bring a claim.

---

[78] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (internal quotations and citations omitted).

[79] *DOIT, Inc. V. Touche, Ross & Co.*, 926 P.2d 835, 842 (UT 1996).

[80] *Russell Packard Develoment, Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005) (quotations and citations omitted).

[81] *Torrie v. Weber County*, 309 P.3d 216, 219 (Utah 2013).

[82] *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Ut. App. 2013) (citing *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (explaining that "[t]he elements of negligent misrepresentation are similar to

## B.  Arguments on Claim Accrual

Wrapid and Layton disagree about which event was "the last event necessary to bring [this] cause of action." Wrapid asserts that the claims accrued "after the allegedly inadequate insurance policies were issued and Layton had the opportunity to review them,"[83] in 2006 at the time of the presentations, or in early 2007, "well before April 23, 2010,"[84] four years prior to the filing of Layton's Complaint. In contrast, Layton argues that its claims accrued, at the earliest, when Layton was denied insurance coverage in November and December of 2010.[85] If Wrapid is correct, the statute of limitations ran before Layton's Complaint was filed. If Layton is correct, Layton's Complaint was properly filed within the four-year statute of limitations.

## C.  Discussion on Statute of Limitations Grounds for Motion to Dismiss

Layton argued that its claim did not accrue until November or December of 2010, when it was denied insurance coverage for BCRE's counterclaims.[86] In support of its position, Layton cites to a New Mexico case, *Spurlin v. Paul Brown Agency*.[87] In that case, Paul Brown Agency "orally agreed to obtain liability insurance covering" Spurlin's vehicle in 1961.[88] On December 3, 1962, Spurlin's vehicle was involved in an accident with another vehicle.[89] Four days later, when Spurlin contacted Paul Brown Agency, the agency told Spurlin "there was no insurance

---

those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud) (quotations and citations omitted).

[83] Motion at 6–7; Reply Memorandum in Support of Motion to Dismiss ("Reply Memorandum") at 6, <u>docket no. 26</u>, filed August 14, 2014.

[84] *Id.*

[85] Layton's Response to Wrapid's Motion to Dismiss ("Layton's Response") at 14, <u>docket no. 23</u>, filed July 28, 2014; *see also* Complaint ¶¶ 34–35, at 10.

[86] Layton's Response at 14.

[87] 454 P.2d 963 (N.M. 1969).

[88] *Id.*

[89] *Id.*

coverage on his vehicle."[90] When the owners of the other vehicle in the accident sued the

Spurlins on July 9, 1964, Spurlin demanded that Paul Brown Agency defend the claim.[91] Paul

Brown Agency refused, prompting Spurlin to file an action "for damages for [Paul Brown

Agency's] negligent failure to obtain the policy. [Paul Brown Agency] pleaded … the statute of

limitations as a defense."[92]

Siding with Spurlin, the New Mexico Supreme Court held that "[w]hile the statute of

limitations began to run when the cause of action accrued, there was no cause of action for

negligence until there had been a resulting injury."[93] It added that "[t]he cause of action arising

out of the negligent failure to obtain liability coverage could only accrue when legal liability

materialized . . . when the Price suit was filed, and this only because a policy of insurance such

as [Paul Brown Agency] allegedly failed to furnish would have provided for the insurance

company to furnish a defense."[94] Arguing that the facts in *Spurlin* are analogous to those here,

Layton asserts that the statute of limitations did not begin to run until BCRE filed the

counterclaims for allegedly defective construction.[95]

Wrapid argues that *Sprulin*, in addition to being non-controlling, is factually

distinguishable and is therefore irrelevant. It is true that *Spurlin* is not like this case. Wrapid is

not in the same position as Paul Brown Agency: Wrapid is not an insurance agency, and did not

provide insurance, but was only the appointed administrator.[96] The facts at this stage give no

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 964.

[94] *Id.*

[95] Layton's Response at 14–15.

[96] Complaint ¶ 20, at 6.

indication that Wrapid had control over the insurance policy itself.[97] Moreover, none of Layton's claims is "an insurance agent claim for 'failure to procure' proper insurance."[98] Instead, Layton's claims are based on allegedly "negligent misrepresentations which induced Layton to contractually commit to a program that was 'illusory' and not as represented."[99] As Wrapid points out, "Layton already fully litigated against [Moody Insurance] [Layton's] claims for 'failure to procure' proper insurance."[100] Because Layton's claims against Wrapid center on allegations of negligent misrepresentation rather than failing to procure proper insurance, the facts of this case are distinct from *Spurlin*. Nevertheless, *Spurlin* still stands for the fundamental principle that "[w]hile the statute of limitations began to run when the cause of action accrued, there was no cause of action for negligence until there had been a resulting injury."[101]

　　　　Wrapid points to *Logan v. Bank of America* as a decision from this district on similar facts.[102] In *Logan*, Bank of America allegedly failed to disclose important loan information to Logan before issuing a loan.[103] Although the loan closed in 2006, the claim was not brought against Bank of America until 2012.[104] Bank of America moved to dismiss on the basis that Logan failed to state a claim upon which relief could be granted.[105]  The court determined that "the statute of limitations on [Logan's] claims began [when] the loan closed" in 2006.[106] The

---

[97] *See id.*

[98] Reply Memorandum at 5

[99] *Id.*

[100] *Id,* at 6.

[101] *Spurlin*, 454 P.2d at 964.

[102] 2012 WL 5874364 (D. Utah Nov. 12, 2012).

[103] *Id.* at *1.

[104] *Id.* at *3.

[105] *Id.* at *1.

[106] *Id.* at *3.

court opined that Logan could have learned of the misrepresentation "through reasonable diligence" at the time he entered the transaction.[107]

This case is factually analogous to *Logan* in that Layton thought, allegedly because of Wrapid's representations, that it would receive something different from what it actually received.[108] However, *Logan* is distinguishable on a very important factor: damage. In *Logan*, the product delivered was a loan, and the alleged misrepresentations concerned the interest formula, so damage that began immediately upon the loan's closing when interest was accruing differently from what was represented. Here, the injury did not take place upon the execution of the insurance policies or the signing of the second Layton-Black Diamond construction contract: the injury took place at the earliest, when Layton was denied insurance coverage in November and December of 2010.[109]

Wrapid attempts to use the discovery rule as a method of triggering the statute of limitations, regardless of when the damage occurred. The discovery rule defeats a tolling of a statute of limitations when the plaintiff could have discovered the existence of the cause of action by its own due diligence.[110] However, Wrapid lifts the discovery rule from the context of statute tolling and interjects it in the context of claim accrual. Wrapid argues that although Layton did not suffer the full economic effect of the alleged misrepresentation until BCRE filed its counterclaim,[111] the claim accrued when Layton could have learned of the misrepresentation

---

[107] *Id.*

[108] Complaint ¶ 22, at 7.

[109] Layton's Response to Wrapid's Motion to Dismiss ("Layton's Response") at 14, <u>docket no. 23</u>, filed July 28, 2014; *see also* Complaint ¶¶ 34–35, at 10.

[110] *See, e.g.*, *Mackay v. America's Wholesale Lender*, 2012 WL 464648 *2, Case No. 2:11-cv-00628-DN (D. Utah, Feb. 13, 2012).

[111] Complaint at 9–10..

"through reasonable diligence."[112] This is not the proper application of the discovery rule, and none of Wrapid's cited authority supports this application in Utah.

Specifically, *Mackay v. America's Wholesale Lender*[113] and *Thornton v. Countrywide Mortgage Ventures, LLC*[114] dealt with loan terms, like *Logan* as discussed above, and therefore the damage was immediate. In *Jepson v. State of Utah, Department of Corrections*,[115] the Utah Court of Appeals dealt with a limitation on personal injury actions arising from automobile accidents, holding that the claim accrued when the plaintiff "had sustained injury to support a cause of action, irrespective of whether 'the full extent of damages has been ascertained.'"[116] Like *Logan*, *Mackay*, and *Thornton*, the plaintiff in *Jepson* was injured immediately, supporting, rather than opposing, Layton's position. In *Norris v. Baxter Healthcare Corp.*,[117] the Tenth Circuit, applying the Colorado discovery rule to determine when a product liability action accrues, held that "[u]ncertainty as to the full extent of the damage does not stop the accrual of a cause of action."[118] As in *Jepson*, plaintiff Norris had clearly been damaged, and the only outstanding question was the extent of the damage.

Cases from other jurisdictions oppose the Utah rule and are therefore not persuasive. In *Gander Mountain Company v. Islip U–Slip LLC*,[119] a New York federal district court held that plaintiff's negligent misrepresentation claim accrued on the date that a lease was executed on a property in a flood plain, although the property was not flooded until two years later. However,

---

[112] *Logan* at *3.

[113] 2012 WL 464648 *2, Case No. 2:11-cv-00628-DN (D. Utah, Feb. 13, 2012).

[114] 2011 WL 4964275, Case No. 2:11-cv-00467-DAK (D. Utah, Oct. 19, 2011).

[115] 846 P.2d 485 (UT Ct. App. 1993)

[116] *Id.* at 488 (citing *Carter v. Cross*, 373 So.2d 81 (Fla. App. 1979).

[117] 397 F.3d 878 (10th Cir. 2005).

[118] *Id.* at 887 (citations omitted).

[119] 923 F.Supp.2d 351 at 368, Case No. 3:12-cv-0800-MAD-DEP (N.D. New York, Feb. 11, 2013).

this New York case appears to conflict with the Utah rule that "a statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action,"[120] which in Utah includes a party's "injury and damage,"[121] and therefore, a Utah court would presumably disagree with the federal district court in New York. Similarly, in *Kansa Reinsurance Company, LTD. V. Congressional Mortgage Corporation of Texas, et al.*,[122] the Fifth Circuit interpreted Texas law to decide that a negligent misrepresentation claim sounds in negligence rather than fraud, and therefore, "the limitations period for negligence actions runs from 'the commission of the negligent act, not the date of the ascertainment of damages.'"[123] Again, this conflicts with the Utah rule on accrual of an action.

## D.  Conclusion – Layton's Claims Are Not Barred by Statute of Limitations

"[A] statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action."[124] A claim for negligence requires "that the plaintiff in fact suffered injuries or damages,"[125] and similarly, a claim for negligent misrepresentation requires a "party's injury and damage."[126] Therefore, Layton's claims did not accrue until injury triggering

---

[120] *Russell Packard Develoment, Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005) (quotations and citations omitted).

[121] *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d at 1085 (explaining that "[t]he elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud) (quotations and citations omitted).

[122] 20 F.3d 1362 (5th Cir. 1994).

[123] *Id.* at 1372.

[124] *Russell Packard Develoment, Inc.*, 108 P.3d at 746 (quotations and citations omitted).

[125] *Torrie v. Weber County*, 309 P.3d 216, 219 (Utah 2013).

[126] *Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Ut. App. 2013) (citing *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 40 (Utah 2003) (explaining that "[t]he elements of negligent misrepresentation are similar to those of fraud except that negligent misrepresentation does not require the intentional mental state necessary to establish fraud) (quotations and citations omitted).

the statute of limitations took place, at the earliest, when Layton was denied insurance coverage

in November and December of 2010.[127]

## II.     Layton Failed to State Actionable Negligence and Negligent Misrepresentation Claims

### A.  Layton's Allegations of Negligence and Negligent Misrepresentation Are Identical

Under Layton's first cause of action for negligence, Layton alleges that "Wrapid owed

Layton duties of reasonable care in communicating, describing, explaining, preparing and/or

administering the Program,"[128] and that

> Wrapid breached its duties by, among other things, misstating the coverage
> provided by the Program; providing improper advice concerning whether to
> obtain certain coverage outside of the Program; failing to communicate important
> potential holes in coverage under the Program, including damage to the Project
> during construction; and omitting significant information concerning the
> exclusions and limitations of coverage available under the Program.[129]

Under Layton's second cause of action for negligent misrepresentation, Layton similarly

alleges that "Wrapid Specialty was negligent in communicating to Layton that the Program

included coverage which was not, in fact, provided under the subject insurance policies, as well

as in omitting material limitations and exclusions with respect to the coverage that was

procured,"[130] and that "Wrapid Specialty failed to exercise reasonable care and competence in

communicating crucial information to Layton, including, but not limited to, explaining the

Program's coverage, limitations endorsements, and exclusions."[131] Layton lists "[s]ome of the

material coverage limitations, exclusions, or gaps that Wrapid Specialty was negligent in

communicating to Layton" including:

---

[127] Layton's Response to Wrapid's Motion to Dismiss ("Layton's Response") at 14, <u>docket no. 23</u>, filed July 28, 2014; *see also* Complaint ¶¶ 34–35, at 10.

[128] Complaint ¶ 38, at 10.

[129] *Id.* ¶ 39, at 10.

[130] *Id.* ¶ 42, at 11.

[131] *Id.* ¶ 43, at 11.

damage to the Project during construction, damage to non-residential portions of the Project, damage to the Project prior to the close of escrow of any unit, a so-called 'cross-suits' exclusion, eroding policy limits, and a provision giving the first excess carrier a right, but not a duty, to defend against covered claims.[132]

Layton alleges that Wrapid "made its representations before the insurance policies in question had even been bound and issued,"[133] "in the course of rendering its and in the course of its business as a third-party administrator;"[134] that Wrapid "knew or should have known that Layton would rely on the information provided;"[135] and that Layton relied on these representations.[136]

Layton states two claims alleging largely the same tort. Layton's claim for negligence is only framed as negligence in communication or omission, and none of Layton's alleged facts offer any variation on the theme of negligence other than through communications or omissions. The only exception is the allegation that Wrapid was negligent in "preparing and/or administering the Program,"[137] but none of the alleged facts address any act in Wrapid's preparation or administration other than the alleged communications and omissions. Therefore, Layton presents two separately labeled causes of action for negligence and negligent misrepresentation, but the substance of the negligence claim is not different from that of the negligent misrepresentation claim. More specifically, the duties owed and the alleged tortious conduct by Wrapid are the same: negligent misrepresentations.

## B.  Wrapid's Duty under Utah Code § 31A-23a-402

In Utah, "where one negligently makes a false representation, expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction,

---

[132] *Id.* ¶ 44, at 11.

[133] *Id.* ¶ 45, at 11.

[134] *Id.* ¶ 46, at 11.

[135] *Id.* ¶ 47, at 12.

[136] *Id.* ¶ 48, at 12.

[137] *Id.* ¶ 38, at 10.

the representor can be held responsible. . . ."[138] In order to prevail under [negligent

misrepresentation, negligence, and fraudulent concealment], a plaintiff must demonstrate the

existence of a duty running between the parties."[139] Utah courts "have acknowledged that

'negligent misrepresentation is a form of fraud,'"[140] and "in addition to affirmative

misstatements, an omission may be actionable as a negligent misrepresentation where the

defendant has a duty to disclose."[141] "Thus, a duty to disclose is a necessary element of the tort

of negligent misrepresentation."[142]

      Wrapid argues that it had no duty to disclose (under a claim based on omissions) where

"Layton does not and could not allege that Wrapid acted as a fiduciary, had superior knowledge,

or exerted special influence over Layton."[143] Wrapid states that "Layton alleged only that Wrapid

was an insurance program 'administrator' retained by Black Diamond and that Wrapid made a

presentation to Layton about a potential insurance program related to Layton's work for Black

Diamond."[144] Wrapid also argues that it has no duty to avoid making negligent

misrepresentations (under a claim based on affirmative statements) "when two commercial

entities are engaged in arm's-length negotiations"[145] because "[b]oth Layton and Wrapid are

---

[138] *Smith v. Frandsen*, 94 P.3d 919, 922–23 (Utah 2004) (original editing omitted) (citing *Jardine v. Brunswick Corporation*, 423 P.2d 659, 662 (Utah 1967)).

[139] *Id.* at 922.

[140] *Id.* at 923 (citing *Atkinson v. IHC Hosps., Inc.*, 798 P.2d 733, 737 (Utah 1990) and others).

[141] *Id.* (citing *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980); *DeBry v. Valley Mortgage Co.*, 835 P.2d 1000, 1008 (Utah Ct.App.1992)).

[142] *Id.*

[143] Motion at 11.

[144] *Id.* at 11–12 (citing Complaint ¶¶ 20, 23, at 6–7.

[145] *Id.* at 14 (citing *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1267 (D. Utah 2004).

sophisticated business entities that were discussing an insurance arrangement at arm's-length."[146] Both arguments fail.

Under the Utah Insurance Code, "[a] person may not perform, offer to perform, or advertise any service as a third party administrator in Utah, without a valid license under Section 31A-25-203."[147] For the purposes of this Motion, Wrapid falls within this licensing requirement because Layton alleged in the complaint that Wrapid was contracted to be the third-party administrator for the Program[148] and "holds itself out as a professional in insurance matters."[149] Under the same title, the code prohibits "a person who is or should be licensed under this title"[150] from "mak[ing] or caus[ing] to be made any communication that contains false or misleading information, relating to an insurance product or contract, any insurer, or any licensee under this title, including information that is false or misleading because it is incomplete. . . ."[151]

Wrapid erroneously argues that this portion of the Utah Insurance Code concerns "marketing by *insurance producers*" while Wrapid is "a third party administrator,"[152] and "Chapter 23a of the Utah Insurance Code applies to 'licensing producers, consultants, and reinsurance intermediaries,' not [third party administrators]."[153] Wrapid is correct regarding the chapter heading of Chapter 23a, but "a statute's title is not part of its text and cannot be used as a

---

[146] *Id.* at 16.

[147] UTAH CODE ANN. § 31A-25-201(1).

[148] Complaint ¶ 20, at 6.

[149] *Id.* ¶ 19, at 5.

[150] *Id.* § 31A-23a-402(1)(a)(i)(A).

[151] *Id.* § 31A-23a-402(1)(a)(i).

[152] Reply Memorandum in Support of Motion to Dismiss ("Wrapid's Reply") at 11, docket no. 26, filed Aug. 14, 2014.

[153] *Id.* (citing UTAH CODE ANN. § 31A-23a at Chapter Heading; and UTAH CODE ANN. § 31A-23a-101) (emphasis in the original).

tool of statutory construction unless the statute's language is ambiguous."[154] Moreover, the text of § 402 makes the statutory duty applicable to anyone "who is or should be licensed under this *title*,"[155] not just to those subject to Chapter 23a. Wrapid readily labels itself as "a third party administrator,"[156] and there is no question that the Utah Insurance Code requires the licensure of third party administrators,[157] thereby making the statutory duty applicable to them. Therefore, under the Utah Insurance Code, Wrapid owes a duty to not make false or misleading communications or communicate information that is false or misleading because it is incomplete.

## C.  The Alleged Misrepresentations and Omissions Are Not Actionable

Wrapid correctly argues that Layton has failed to state a claim upon which relief can be granted because Layton's alleged misrepresentations were (1) predictions of future events rather than representations regarding presently existing material facts; (2) statements of opinion; and (3) undisputedly true. Furthermore, (4) Layton alleged no actionable omissions. Wrapid also argues that Layton's reliance was unreasonable,[158] but because Wrapid prevails on whether the alleged misrepresentations and omissions are actionable, it is unnecessary to examine reliance.

### *(1)    Statements regarding future events*

Wrapid argues that "Layton's own Complaint unambiguously demonstrates that all statements by Wrapid about the Program are non-actionable predictions of future events," because "Layton alleged that at the time of Wrapid's November 2006 presentation, 'the

---

[154] *Anderson Development Co. v. Tobias*, 116 P.3d 323, 336 (Utah 2005) (citing *Stephens v. Bonneville Travel*, 935 P.2d 518, 521–22 (Utah 1997)); *see also Blaisdell v. Dentric Dental Systems, Inc.*, 284 P.3d 616 (Utah 2012) (citing *State v. Gallegos*, 171 P.3d 426, 430 (Utah 2007)) ("The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent").

[155] UTAH CODE ANN. § 31A-23a-402(1)(a)(i).

[156] Reply Memorandum in Support of Motion to Dismiss ("Wrapid's Reply") at 11, docket no. 26, filed Aug. 14, 2014.

[157] UTAH CODE ANN. § 31A-25-201(1).

[158] Motion at 13–14.

insurance policies under the Program had not yet been bound or issued.'"[159] Indeed, "a representation negligently made may be actionable when the representation concerns a past or present fact,"[160] and "[a] statement of a future event . . . cannot form the basis for a negligent misrepresentation claim."[161]

Layton argued that "Utah law clearly establishes the right of a party to recover for negligent misrepresentation when material misrepresentations as to an insurance policy's provisions are made, the party reasonably relies on those misrepresentations in buying the insurance coverage, and the reliance results in legal injury to the party."[162] However, the Utah Supreme Court case Layton cites as support for this argument squarely addresses a claim for promissory estoppel labeled as equitable estoppel, not negligent misrepresentation.[163] Although an estoppel claim based on promises of future action may be treated differently in the insurance context, it is not sufficiently relevant to this case because Utah courts have not applied that reasoning to claims for negligent misrepresentation. Utah courts may later choose to incorporate this piece of their estoppel analysis into negligent misrepresentation, but they have yet to do so.

That is not to say that a misrepresentation regarding future performance cannot fit within the tort of negligent misrepresentation. Although Utah courts have "long recognized as actionable deceit a promise accompanied by the present intention to perform it, made for the purpose of deceiving the promisee, thereby inducing him to act where otherwise he would not

---

[159] *Id.* at 18–19 (citing Complaint ¶ 23, at 7).

[160] *Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 612 (UT 1982); *see also Town Park Hotel Corp. v. Priskos Investments, Inc.*, Case No. 1:02-cv-00164-TV, 2006 WL 658896 at *7 (D. Utah) (citing *Gildea v. Guardian Title Co. of Utah*, 970 P.2d 1265, 1271 (Utah 1998) ("To prevail on a claim for negligent misrepresentation, [a plaintiff] must establish that [the defendant] carelessly or negligently made a false representation concerning a presently existing material fact. . . ."); *Robinson v. Tripco Investment, Inc.*, 21 P.3d 219, 223 (Utah Ct. App. 2000)).

[161] *Thornton v. Countrywide Mortg. Ventures, LLC*, Case No. 2:11-cv-00467-DAK, 2011 WL 4964275 at *3 (D. Utah) (citing *Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1949)).

[162] Layton's Response at 29–30 (citing *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088 (Utah 2007)).

[163] *See Youngblood*, 158 P.3d at 1091–94.

have done so,"[164] a plaintiff would have to show that a promissor's expression of intention to perform is made in bad faith,[165] meaning that "the representor, at the time of the representation, did not intend to perform the promise and made the representation for the purpose of deceiving the promissee."[166] Layton has alleged no facts that would meet this standard.

Layton also relies on the Utah Supreme Court case of *Boud v. SDNCO, Inc.*[167] to argue that "misrepresentations made by salespeople before the product is actually delivered is actionable where the misrepresentations are material."[168] In *Boud*, the plaintiff sued after a yacht seller would not rescind his purchase, alleging breach of express warranty and negligent misrepresentation. The alleged misrepresentation was a photograph of the boat apparently moving at a high rate of speed with a caption that said the boat offered "the best performance and cruising accommodations in its class" and "superb handling."[169]

The *Boud* court's reasoning focused on whether the brochure contained a statement of opinion, mere "puffing," or whether it created an express warranty under the Uniform Commercial Code as adopted by the State of Utah, and dependently, an actionable misrepresentation.[170] The court in no way considered whether the alleged misrepresentation was a presently existing fact or a statement regarding a future event based on delivery of the yacht, and this case cannot support Layton's argument.

---

[164] *Cerritos Trucking Co.*, 645 P.2d at 611.

[165] *Id.* at 612.

[166] *Andalex Resources, Inc.*, 871 P.2d at 1047 (citing *Cerritos Trucking Co*, 645 P.2d at 611.

[167] 54 P.3d 1131 (UT 2002).

[168] Layton's Response at 30.

[169] *Boud*, 54 P.3d at 1133.

[170] *Id.*at 1134–36.

Layton alleged in its Complaint that at the time of Wrapid's alleged misrepresentations and omissions, "the insurance policies under the Program had not yet been bound or issued,"[171] but "the Program . . . was eventually procured by Moody."[172] Therefore, Wrapid's commentary on the insurance to be provided by Moody was prospective in nature, forecasting what the Program *would* cover. Because "[a] statement of a future event . . . cannot form the basis for a negligent misrepresentation claim,"[173] Layton has not alleged actionable misrepresentations.

    (2)    *Statements of opinion*

Wrapid argued that "[t]he statements at issue cannot support a claim for misrepresentation because they are statements of opinion."[174] "It is a well[-]recognized rule that 'one has a right to rely on statements of material facts or on positive statements, essentially connected with the substance of the transaction, where they are not mere general commendations or expressions of opinion. . . .'"[175]

As discussed above, *Boud* focused specifically on this issue of a statement as an opinion or a statement of fact. In *Boud*, the Utah Supreme Court reasoned that "[t]o qualify as an affirmation of fact, a statement must be objective in nature, i.e., verifiable or capable of being proven true or false. Similarly, to be relied upon as a promise, a statement must be highly specific or definite."[176] The *Boud* court paid special attention to the language used:

---

[171] Complaint ¶ 23, at 7.

[172] *Id.* ¶ 22, at 7.

[173] *Thornton*, 2011 WL 4964275 at *3 (citing *Andalex Resources, Inc.*, 871 P.2d at 1047).

[174] Motion at 17.

[175] *Migliaccio v. Continental Min. & Mill. Co.*, 196 F.2d 398, 403 (10th Cir. 1952) (citing 23 Am.Jur., Fraud and Deceit, Sec. 146, p. 949 and cases cited).

[176] *Boud*, 54 P.3d at 1135. The *Boud* court cited *Hirschberg Optical Co. v. Dalton, Nye & Cannon Co.*, 7 Utah 433, 436 (1891) for a definition of the term "puffing": "The general praise of his own wares by a seller, commonly called "puffing," for the purpose of enhancing them in the buyer's estimation, has always been allowed; provided it is kept within reasonable bounds; that is, provided the praise is general, and the language is not the positive affirmation of a specific fact affecting the quality, so as to be an express warranty. . . ." (internal quotation and citation omitted),

Cruisers' brochure contains language characteristic of an opinion. Specifically, its assertions that the 3375 Esprit offers the 'best performance' and 'superb handling' rely on inherently subjective words.

. . . .

The word 'best' is a description that must ultimately be measured against some opinion or other imprecise standard, and 'superb' is a near synonym subject to the same qualification. [Internal citation] Similarly, 'performance' is not a single quality, but rather embodies numerous qualities a boat may possess, and different people may place different weight on each individual quality. Reasonable people could therefore disagree and legitimately argue that several different boats in a given class perform "best" based on personal preferences that would be impossible to discount or disprove. As such, it would be unreasonable as a matter of law for anyone to rely on such a statement as one of fact. Accordingly, the language contained in the caption at issue is a mere statement of opinion.[177]

Layton argues that "[t]o the extent any of Wrapid's statements were opinion, they remain actionable because Wrapid held itself out as an insurance professional and an expert in matters of insurance" and "[o]pinions of professionals and those who are in the business of supplying information for the guidance of others in their business transactions are actionable."[178] However the cited case law Layton offers specifically addresses "[t]he issue of whether a duty exists,"[179] and not whether an opinion constitutes a material fact because an insurance professional voiced it. It has already been determined that Wrapid owes a *duty* to Layton under Utah Code § 31A-23a-402,[180] but the issue here is whether Wrapid's alleged statements are opinion or actionable representations of presently existing material fact. A repackaged discussion of duty is misplaced.

Layton's Complaint alleges that "Wrapid Specialty represented to Black Diamond and Layton that the Program was a superior insurance product compared to what the construction

---

[177] *Id.* at 1135–36.

[178] Layton's Response at 29 (citing *Hafen v. Strebeck,* 338 F.Supp.2d 1257, 1265 (D. Utah 2004) (citing *Freeman v. Ernst & Young,* 516 N.W.2d 835, 838 (Iowa 1994); *Onita Pac. Corp. v. Trustees of Bronson,* 843 P.2d 890, 896–97 (Oregon 1992); *Moorman Mfg. v. National Tank,* 435 N.E.2d 443, 452 (Ill. 1982))).

[179] *Hafen,* 338 F.Supp.2d at 1265.

[180] *See supra* Part II(B).

participants, including Layton, had under their own insurance,"[181] and "that the Program would provide Layton with the same or better insurance coverage than Layton already had."[182] As in the *Boud* case, the alleged comparison that the Program would be "superior" or "better" "is not a single quality, but rather embodies numerous qualities . . . and different people may place different weight on each individual quality. Reasonable people could therefore disagree," and therefore, "it would be unreasonable as a matter of law for anyone to rely on such a statement as one of fact." [183] Accordingly, these alleged statements are non-actionable statements of opinion.

     *(3)    Statements that were not alleged to be false*

     Layton's Complaint alleges several statements that Wrapid argues were "undisputedly true based on the allegations in the Complaint"[184] because they were never contradicted. Accordingly, they necessarily cannot be a basis for these claims. For example, the Manual provided examples of the general liability claims the Program was intended to cover like "'third-party bodily injury and property damage arising from enrolled Subcontractors' work,' and 'property damage to completed work on the Project site during construction'"[185] without an allegation that the Program was not intended to cover such claims.

     Layton alleges that the Manual "advised enrolled construction participants to exclude the Project from their commercial general liability insurance policies to save premiums,"[186] but in fact the Manual did not *advise* such a coverage exclusion; rather, it merely identified possible savings: "[t]he Project *may* be excluded from your normal general liability insurance policy for a

---

[181] Complaint ¶ 22, at 7.

[182] *Id.* ¶ 23, at 7.

[183] *Boud*, 54 P.3d at 1135–36.

[184] Motion at 17.

[185] Complaint ¶ 27, at 8.

[186] *Id.* ¶ 26, at 8.

*possible* premium and deductible savings."[187] Furthermore, Layton made no allegation that the

Project couldn't be excluded from a general policy for possible savings. The Complaint also

alleged that the Manual "advised construction participants that the Program did not cover

worker's compensation, automobile liability, or contractor's equipment, and that the participants

would need to procure such insurance on their own,"[188] but did not allege that to be false.

The Complaint also alleges that the Manual stated that "due to the coverage provided

under the Program, enrolled construction participants were not required to separately purchase

completed operations coverage for the Project,"[189] and Layton made no allegation that any such

requirement to separately purchase completed operations coverage existed. In fact, the only

alleged requirement came from the Layton-Black Diamond construction contracts, requiring that

construction participants enroll in the Program.[190]

The Complaint also alleges that the Manual "stated that the Program covered the entire

period of the Project's construction plus completed operations coverage for the duration of any

applicable statutes of limitation,[191] and although Layton took issue with the completed operations

coverage, as discussed regarding omissions below, the Complaint contains no allegation that the

complete operations coverage ended prior to "any applicable statutes of limitation."[192]

---

[187] *See* Manual at 7, attached as Exhibit C to Motion, docket no. 20-4, filed June 30, 2014 (emphasis added); *see also id.* at 15 ("you are not required to buy additional insurance or completed operations coverage for your ongoing contractual indemnity obligations for this Project (unless you decide to buy such insurance)") (emphasis added).

[188] Complaint ¶ 28, at 8–9.

[189] *Id.* ¶ 26, at 8.

[190] *Id.* ¶ 19, at 5.

[191] *Id.*

[192] *Id.*

The Complaint also alleges that the Manual included a "section titled Summary of Program" which describes "$52,000,000 in insurance coverage."[193] Although the complaint stated that "the coverage provided by the Program [was] illusory,"[194] that is a conclusory allegation which need not be considered.[195] Moreover, Layton expressly alleges that it and the other "construction participants were named insureds under" policies totaling $52,000,000 in coverage,[196] rendering this fact undisputed. Similarly, Layton alleges that "representatives of Layton also had telephone conversations with representatives of Wrapid Specialty wherein Wrapid Specialty made additional representations to Layton concerning the Program's coverage and limitations."[197] Although this statement is not conclusory, there are no specific facts that relate to an actionable misrepresentation.

Many of the allegations in the Complaint are undisputed, and therefore, are not actionable misrepresentations. Moreover, these examples illustrate the general nature of Wrapid's alleged misrepresentations. As discussed more fully below regarding omissions, Layton seeks a degree of detail and specificity that is beyond Wrapid's duty.

(4)    *Omissions that were not false or misleading*

Wrapid argues that it had no duty to speak, and therefore the alleged omissions are not actionable.[198] "[T]he Manual on which Layton relies for its claims repeatedly states that it does not provide insurance coverage advice or interpretations, and that participants are to rely solely

---

[193] *Id.* ¶ 29, at 9.

[194] *Id.* ¶ 22, at 7.

[195] *See Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[196] Complaint ¶ 21, at 6.

[197] *Id.* ¶ 30, at 9.

[198] Motion at 11–12.

on the policies themselves,"[199] and that "the information regarding the policies was 'reasonably within the knowledge of both parties,'" and "[t]here is nothing in the pleadings to indicate [Wrapid] was in a better position than [Layton], to have access to the relevant information."[200]

While Wrapid is not liable to Layton for simply omitting information in its statements about the Program to Layton, Wrapid does owe a duty to Layton under Utah Code § 31A-23a-402 to not communicate information that is false or misleading by being incomplete.[201] Importantly, not every omission is actionable, but only those that rise to the level of misleadingly incomplete.  Although Wrapid's arguments fail on the issue of whether a duty exists, these arguments remain partially relevant to any false or misleading character of the alleged omissions. For example, although the multiple disclaimers in the Manual do not absolve Wrapid of its statutory duty, they may be relevant to whether the information was misleadingly incomplete.

Layton alleges three omissions in the Complaint. First, Layton alleges that the Manual "said nothing to the enrolled construction participants to the effect that they needed to procure general liability insurance for damage to the Project occurring during construction."[202] Second, Layton alleges that the Manual "did not indicate that the Program's completed operations coverage only incepted when the Project was completed and closed escrow."[203] Layton argues that these omissions are actionable in light of the Manual's statement that "the Program provided comprehensive commercial general liability and completed operations coverage to enrolled construction participants for their work performed at the Project site."[204] Third, Layton alleges

---

[199] *Id.* at 12.

[200] *Id.* (citing *Debry v. Valley Mortgage Co.*, 835 P.2d 1000, 1007 (Utah Ct. App. 1992)

[201] *See supra* Part II(B).

[202] Complaint ¶ 28, at 8–9.

[203] *Id.*

[204] *Id.*

that "the Manual made no reference to the various layers of coverage having different exclusionary provisions, including a so-called Cross Suits Exclusion in the Interstate Policy"[205] and did not "mention any differences in the coverage provided by the various layers."[206]

Layton presumably relies on the word "comprehensive" to implicitly argue that Wrapid stated that the Program covered everything unless Wrapid explicitly said it was excluded, and any omitted policy limitations would be actionable. However, any experience with any type of insurance shows that every policy, regardless of the "comprehensive" label, contains numerous limitations, exclusions, and restrictions. The Manual's statement that "the Program provided comprehensive commercial general liability" coverage is a general statement that could not reasonably be expected to indicate that the Program was truly comprehensive, making it the first of its kind in the insurance industry. Therefore, any omission that resulted in Wrapid's failure to notify Layton that the Program did not cover everything was not false or misleading because it was incomplete. Although Layton may have inferred that the eventual policies would cover everything Wrapid did not expressly exclude, Wrapid's duty does not extend to each of Layton's inferences.

Furthermore, Wrapid bore no duty to expressly disclose every limitation that would appear in the yet-to-be bound and issued policies.[207] Wrapid's duty did not render every omission actionable, but only those that rise to the level of false and misleading omissions. Furthermore, the policies had yet to be bound and issued.[208] Therefore, there may not have been presently existing material facts that Wrapid could have omitted. Just as an affirmative

---

[205] *Id.*

[206] *Id.* ¶ 29, at 9.

[207] *Id.* ¶ 45, at 11.

[208] *Id.* ¶ 45, at 11.

representation regarding a future event is not actionable,[209] an omission regarding a future event is equally not actionable.

With that context, the alleged omissions do not rise to the level of false or misleading omissions. The alleged omissions are, at best, a few of many policy exclusions and limitations that were eventually written into the yet-to-be bound and issued policies, and Wrapid bore no duty to expressly disclose every limitation that Moody could or would include in the policies. Furthermore, as to the first alleged omission, whether "the enrolled construction participants . . . *needed* to procure"[210] certain coverage is a different issue entirely from whether the Program *provided* that type of coverage. As to the second alleged omission, even Layton's description of "the Program's completed operations coverage"[211] implies that completion of the Project is a key component of that coverage, suggesting that the substance of that coverage wasn't truly omitted at all. Similarly, the third alleged omission cannot be construed as false or misleading. Even if there was "no reference to the various layers of coverage having different exclusionary provisions"[212] or to "differences in the coverage provided by the various layers,"[213] the only reasonable inference would be that there would be differences in the various layers, otherwise there would be no reason for having more than one layer of coverage. Therefore, the alleged omissions are not false or misleading, but rather entirely consistent with the policies that were eventually bound and issued under the Program.

For the reasons stated above, Wrapid's Motion is GRANTED as it relates to Layton's claims of negligence and negligent misrepresentation.

---

[209] *Thornton*, 2011 WL 4964275 at *3 (citing *Andalex Resources, Inc.*, 871 P.2d at 1047).

[210] Complaint ¶ 28, at 8–9.

[211] *Id.*

[212] *Id.*

[213] *Id.* ¶ 29, at 9.

### III.    Declaratory judgment

Under Layton's third cause of action for declaratory judgment, Layton states that it may incur damages for construction defects,[214] and that "these damages, if any, would have and should have been covered as indemnity obligations under the insurance policies that Wrapid Specialty negligently communicated, described, explained, or administered to Layton."[215] Layton re-alleges that Wrapid "breached the duties it owed to Layton to properly communicate, describe, explain, and administer the Program."[216] Layton states that it "seeks a declaratory judgment stating that, in the event Layton is adjudicated as liable to BCRE and/or Vail 09 for alleged property damage and/or construction defects on the Project, Wrapid Specialty is liable to Layton in the full amount thereof."[217]

Layton's Complaint bases its declaratory judgment claim upon its claims for negligence and negligent misrepresentation. Because those claims have been dismissed as described above, the declaratory judgment claim is now moot. Therefore, Wrapid's Motion is GRANTED as it relates to Layton's claim for declaratory judgment.

### IV.    Promissory Estoppel

Under Layton's fourth and final cause of action for promissory estoppel, Layton alleges that Wrapid made the following non-inclusive list of promises to Layton regarding the Program: "the promise that the Program would afford the same, or better, coverage to Layton than was then available to Layton under its existing insurance policies; and the promise that the Program would cost the same, or be cheaper, than the premium Layton would pay under its existing

---

[214] *Id.* ¶ 51, at 12.

[215] *Id.* ¶ 53, at 12.

[216] *Id.* ¶ 54, at 12.

[217] *Id.* ¶ 56, at 13.

insurance policies."[218] According to Layton, Wrapid made these promises expecting to induce Layton to rely and act upon them,[219] and Layton reasonably relied on them to its detriment by, among other things, "enroll[ing] under the Program, exclude[ing] the Project from the coverage provided by Layton's existing insurance policies, and . . . not seek[ing] insurance coverage for its work on the Project greater than that promised to be provided by the Program."[220] Layton says it was harmed by its reliance on Wrapid's alleged promises because the insurance provided was less than promised and less than what Layton could have obtained from its own insurance policies or insurance procured specifically for the Project.[221]

Wrapid made several general arguments pertaining to all claims without specifically identifying promissory estoppel. Because the other claims were addressed above, these remaining general arguments are addressed here as they may relate to promissory estoppel. First, Wrapid argued that because Layton unsuccessfully attempted to add claims against Wrapid in previous litigation against the insurance providers, claim preclusion bars these claims.[222] However, promissory estoppel was not among the claims Layton attempted to add in the BCRE Litigation. Therefore, this order need not address whether an unsuccessful attempt at amending a complaint can preclude later assertion of those claims because Wrapid's Motion does not extend that argument to Layton's promissory estoppel claim.

Second, Wrapid argues that Layton's claims are barred by the economic loss doctrine.[223] Wrapid asserts that "Layton's claims – founded as they are in the terms of and duties established

---

[218] *Id.* ¶ 58, at 13.

[219] *Id.* ¶ 59, at 13.

[220] *Id.* ¶ 60, at 13.

[221] *Id.* ¶ 61, at 14.

[222] Motion at 1–6.

[223] *Id.* at 19–23.

by the parties' contracts – are barred by the economic loss rule."[224] Wrapid focuses on provisions

of the Layton-Black Diamond contract that address the substance of the alleged

misrepresentations in this case,[225] but fails to argue how those provisions govern or even relate to

duties Wrapid owes in communicating with Layton. For example, the fact that the Layton-Black

Diamong Contract "commits to the availability of $52,000,000 in insurance coverage"[226] has no

bearing on Wrapid's potential liability for alleged promises that the insurance would be for that

amount. Layton's ability to sue another party on that contract does not obviate or replace its

ability to sue Wrapid to uphold a promise that Wrapid allegedly made.

Utah has "expressly adopted the independent duty-based rule articulated" by the

Colorado Supreme Court under the economic loss doctrine,"[227] that "the initial inquiry in cases

where the line between contract and tort blurs is whether a duty exists independent of any

contractual obligations between the parties.[228] The Colorado case of *Bartch v. American Family*

*Mutual Insurance Co.*,[229] is relevant. That case held that the economic loss rule did not bar

claims of negligent misrepresentation because the allegedly violated duty was different from the

obligations in the contract.[230] Although not directly on point with promissory estoppel, the case

focused on a fundamentally important distinction between tort and contract claims in the context

of economic loss: "what matters for purposes of applying the economic loss rule is whether the

---

[224] Motion at 19.

[225] *See* Motion at 22–23.

[226] *Id.* at 23 (citing AIA Document A111 – 1997, Standard Form of Agreement Between Owner and Contractor (the "Layton-Black Diamond Contract"), attached as Exhibit A to Motion, docket no. 20-2, filed June 30, 2014)).

[227] *Id.* at 19–20, n.70 (citing *Grynbergv. Questar Pipeline Co.*, 70 P.3d 1, 13 (UT 2003).

[228] *Grynberg*, 70 P.3d at 13 (citing *Hermansen v. Tasulis*, 48 P.3d 235, 240 (UT 2002)); *see Town of Alma v. Azco Constr. Inc.*, 10 P.3d 1256, 1259–64 (Colo. 2000).

[229] Case No. 13-CV-01931-RBJ, 2014 WL 1924269 (D. Colo. May 13, 2014).

[230] *Id.*at *2 (citing *A Good Time Rental, LLC v. First American Title Agency, Inc.*, 259 P.3d 534, 537 (Colo. App. 2011).

relevant *duty* arises in the contract. That is a much narrower question than whether the *subject matter* of a dispute is covered by a contract."[231]

Similarly, Wrapid argues that because Wrapid and Layton both contracted with Black Diamond, no tort claims can be brought between Wrapid and Layton on the subjects of the contracts. This would mean that Wrapid could have made any promises about the Program to induce Layton to act in detrimental reliance on those promises, free of liability because the parties were part of an interrelated network of contracts. However, as stated above, there is a distinction between tort liability and contractual obligations. Wrapid's point that Layton's claims are "founded . . . in the terms and duties established by the parties' contracts"[232] may have bearing on whether the promises are actionable promises or whether Layton's reliance was detrimental or reasonable,[233] but the similarity of substance of contracts the parties to a tort case have with other parties does not bar a tort claim under the economic loss rule. Wrapid cannot identify contractual provisions that govern the Layton-Wrapid relationship under which Layton should have sued.

Third, Wrapid argues that Layton improperly split claims.[234] Wrapid argues that Layton made "clear allegations of an agency relationship between Wrapid and Black Diamond."[235] Wrapid argues that because Black Diamond was later superseded, at least in the Project, by BCRE, an agency relationship consequently existed between BCRE and Wrapid. Therefore,

---

[231] *Id.* at *4.

[232] Motion at 31.

[233] Wrapid's Motion made no attempt to discuss the elements of Layton's claim for promissory estoppel or evaluate its strength in relation to those elements.

[234] Motion at 23–25.

[235] *Id.* at 24.

according to Wrapid, because Layton chose to forego claims against BCRE for Wrapid's alleged

torts in the BCRE Litigation, it cannot now pursue those claims against Wrapid.[236]

 Layton argues that Wrapid misconstrues the doctrine of claim splitting, and that a final

judgment in the BCRE Litigation on the Layton-Black Diamond contract would not bar recovery

in this case on Layton's alleged torts.[237] Indeed, "in the claim-splitting context, the appropriate

inquiry is whether, assuming that the first suit were already final, the second suit could be

precluded pursuant to claim preclusion."[238]

 Layton argues that no agency relationship has been alleged that would be a bar:

> [W]hile the [Layton-Black Diamond] Contract was assigned to BCRE by Black
> Diamond, there is no evidence or even an allegation that Black Diamond also
> assigned its contract with Wrapid to BCRE. Thus, even if Wrapid had an agency
> relationship with Black Diamond . . . there is no basis for asserting that Layton
> could recover contractually against BCRE in the [BCRE Litigation] for Wrapid's"
> torts.[239]

Indeed, relying on the bare facts of the Complaint, there is no factual allegation that Wrapid was

an agent of BCRE, and therefore claim splitting is not a valid basis for dismissal at this stage,

based solely on the face of the Complaint.

 Surprisingly, Wrapid makes no arguments specifically targeted at the claim of promissory

estoppel to evaluate the strength of each of the elements of the claim. For example, it is

fundamental that to "prove detrimental reliance on the defendant's representation, the plaintiff

must have done some act which it otherwise would not have done."[240] Specifically, "[d]amages

in promissory estoppel are limited to those which are sustained because the plaintiffs have

---

[236] *Id.*

[237] Layton's Response at 34–35.

[238] *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) (emphasis omitted).

[239] Layton's Response at 35.

[240] *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 756 (Utah Ct. App. 2013) (citing *Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 175 (Utah Ct. App. 1993)).

changed their position to their detriment in reasonable reliance upon the defendant's representations."[241] Layton specifically stated that "Black Diamond had required all of the Project's construction participants to enroll in the Project's "wrap-up insurance program."[242] Therefore, based on Layton's Complaint, it appears Layton did not change its position to its detriment by enrolling in the Program because it was not something Layton "otherwise would not have done."[243]

Furthermore, Wrapid's Motion does not address whether the alleged promises are specific enough to be reliable promises or whether Layton's reliance on those promises was reasonable or otherwise detrimental. Because Wrapid's general arguments fail to merit dismissal, and because Wrapid did not yet test the promissory estoppel claim, Wrapid's Motion is DENIED as it relates to Layton's claim of promissory estoppel.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss[244] is GRANTED in part and DENIED in part.

Signed this 19th day of November, 2015.

BY THE COURT

Judge David Nuffer
United States District Court

---

[241] *Andreason*, 848 P.2d at 175–76 (quoting as accurate the trial court's jury instruction).

[242] Complaint ¶ 19, at 5.

[243] *Cottonwood Imp. Dist.*, 296 P.3d at 756 (citing *Andreason*, 848 P.2d at 175.

[244] Docket no. 20, filed on July 28, 2014.